United States District Court
Southern District of Texas

**ENTERED**

October 03, 2023

Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| BRUCE WAYNE WALKER, <br> TDCJ #1303895, <br><br> Petitioner, <br><br> v. <br><br> BOBBY LUMPKIN, Director, <br> Texas Department of Criminal <br> Justice - Correctional <br> Institutions Division, <br><br> Respondent. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § |

CIVIL ACTION NO. H-20-3501

## MEMORANDUM OPINION AND ORDER

Bruce Wayne Walker (TDCJ #1303895) has filed a Petition for a Writ of Habeas Corpus By a Person in State Custody ("Petition") (Docket Entry No. 1), seeking relief under 28 U.S.C. § 2254 from an aggravated robbery conviction entered against him in Harris County, Texas. Director Bobby Lumpkin of the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ") has answered with Respondent's Motion for Summary Judgment with Brief in Support ("Respondent's MSJ") (Docket Entry No. 32), noting that several of Walker's claims for relief are unexhausted and that the remaining claims are without merit.

This case was stayed on June 22, 2022 (Memorandum Opinion and Order, Docket Entry No. 38, p. 19), when the court granted Petitioner's Motion to Suspend/Stay Briefing Deadlines with Brief

in Support ("Motion to Stay") (Docket Entry No. 35) and denied Respondent's MSJ without prejudice to reconsideration upon reinstatement (Docket Entry No. 38).  The court reinstated the case after Walker filed Petitioner's Response to Respondent's Motion for Summery [sic] Judgment and Motion to Voluntarily Dismiss Any Unexhausted Claims with Brief in Support ("Petitioner's Response") (Docket Entry No. 51).  Director Lumpkin has filed Respondent's Surreply (Docket Entry No. 56), which re-urges Respondent's MSJ (Docket Entry No. 32).  After considering all of the pleadings and the applicable law, the court will grant Respondent's MSJ and will dismiss this action for the reasons explained below.

## I.  **Background and Procedural History**

A Harris County grand jury returned an indictment against Walker on March 24, 2005, charging him with committing aggravated robbery with a deadly weapon, to wit: a firearm.[1]  The indictment was enhanced for purposes of punishment with allegations that Walker had prior felony convictions for burglary of a habitation in 1987 and aggravated robbery in 1992.[2]

At a jury trial in the 182nd District Court of Harris County the State presented evidence that Walker and another man (Raleigh

---

[1]Indictment in Cause No. 1020979, Docket Entry No. 10-7, p. 7. For purposes of identification all pagination references the page numbers imprinted at the top of each docket entry by the court's Electronic Case Filing ("ECF") system.

[2]Id.

Hall) robbed a local pawnshop at gunpoint with assistance from a woman named Diana Michelle Dayton, who was later arrested while in Walker's company in a car that had a substantial amount of jewelry, weapons, and other items stolen from the pawnshop in the trunk.[3] Police recovered additional jewelry and guns that were taken during the robbery from an individual named Clinton Cody Hall, who was charged with possessing stolen property, and from Keith Drury, who was arrested for possession of a controlled substance and eventually helped officers locate the vehicle that was used during the robbery.[4] Dayton, who acknowledged that the aggravated robbery charges against her had been reduced to robbery under the terms of a plea bargain, testified that she, Walker, and Raleigh Hall had been using crystal methamphetamine before they forced the pawnshop manager, Eric Leon, to open the pawnshop at gunpoint so they could rob it.[5] According to Dayton, Walker initiated the robbery one week after he learned that Leon was her former boyfriend.[6]

Walker's defensive theory was that Eric Leon planned the heist and then identified Walker and Dayton as the robbers after he

---

[3]Reporter's Record-Trial on Merits, Vol. 4, Docket Entry No. 10-12, pp. 49-51, 109-14.

[4]Reporter's Record-Trial on Merits, vol. 5, Docket Entry No. 10-13, pp. 50-53; see also Reporter's Record-Trial on Merits, Vol. 4, Docket Entry No. 10-12, pp. 142-54 (describing the motel where Drury was located along with multiple firearms, narcotics, and jewelry stolen from the pawnshop).

[5]Reporter's Record-Trial on Merits, Vol. 4, Docket Entry No. 10-12, pp. 10-12, 16-19, 28-40.

[6]Id. at 28-29.

panicked or got cold feet.[7]  Leon testified that he was duped by Dayton and abducted at gunpoint from his apartment by Walker and Hall, who forced him to open the pawnshop sometime after midnight on December 4, 2004.[8]  After Leon turned off the alarm and opened the vault, Walker and Hall made repeated trips to the car with heavy crates of jewelry and guns from the pawnshop.[9]  The trio of Walker, Hall, and Dayton left after handcuffing Leon to the vault.[10]

Leon identified Walker in open court as one of the men who robbed him at gunpoint,[11] stating that he noticed a distinctive chain tattoo around one of Walker's wrists during the offense and noting further that he was wearing a "D.E.A. hat" that night.[12]  The state had Walker show the jury his wrist, which had a chain tattoo like the one observed by Leon.[13]  Leon denied planning the robbery with Dayton,[14] noting that he was so traumatized by the incident that he continued to receive psychiatric counseling on a weekly basis and was unable to work or trust people since the offense

---

[7]Reporter's Record-Trial on Merits, Vol. 3, Docket Entry No. 10-11, pp. 15-17, 129-30

[8]Id. at 53-71.

[9]Id. at 76-80.

[10]Id. at 85.

[11]Id. at 59-60.

[12]Id. at 92-93.

[13]Id. at 96.

[14]Id. at 129.

-4-

occurred.[15]  The general manager of the pawnshop, who estimated that the retail value of the stolen property exceeded $1.5 million, testified that Leon was a "very good employee" who never caused any problems and left his job due to emotional problems associated with the armed robbery.[16]  The lead investigator, Officer Colleen Guidry, testified that there was no evidence that Leon was involved in the robbery in any way.[17]

Walker presented testimony from a woman named Julie Wallis about a recorded phone conversation with Dayton following her arrest, in which Dayton told Wallis and Walker's wife, Cindy Walker, that Leon planned the robbery and that Walker had nothing to do with it.[18]  Walker also presented testimony from his wife and two house guests, who stated that he was at home when the robbery occurred,[19] but the jury found Walker guilty of aggravated robbery as charged in the indictment and sentenced him to 99 years' imprisonment.[20]

After sentence was imposed Walker's appellate attorney filed a Motion for New Trial, arguing that "[a]t least one material

---

[15]Id. at 136.

[16]Reporter's Record-Trial on Merits, vol. 5, Docket Entry No. 10-13, pp. 87, 91-92.

[17]Id. at 55-56.

[18]Id. at 117-19, 141-42.

[19]Id. at 135-36, 164-66, 175-76.

[20]Judgment on Plea Before Jury Court/Jury Assessing Punishment, Docket Entry No. 10-7, p. 68.

defense witness was kept from court and evidence tending to establish the Defendant's innocence was intentionally [withheld] by the attorney for the State thus preventing its production at trial."[21]   After the trial court granted a hearing by affidavit,[22] Walker's appellate counsel supplemented the record with affidavits from Walker's trial counsel (Paul Decuir, Jr.) and co-defendant Raleigh Hall's counsel (Lisa Jones) accusing the prosecutor of failing to disclose a material witness named John Connally.[23] Counsel provided an affidavit from Connally, who stated that he happened upon the robbery in progress and that he was "positive" that Walker was not one of the perpetrators he saw that night.[24] In addition, counsel presented affidavits from Keith Drury, who stated that he owned a "DEA hat" and that the prosecution wrongly identified Walker as involved in the robbery, and from Tara Gayle Tunstall, an acquaintance of Dayton who believed that Leon was involved in planning the offense.[25]

---

[21]Motion for New Trial, Docket Entry No. 10-7, p. 76.

[22]Order, Docket Entry No. 10-7, p. 78.

[23]Affidavits in Support of a Motion for New Trial: Exhibit 1A—Affidavit of Paul Decuir, Jr. ("Decuir Affidavit") and Exhibit 1B—Affidavit of Lisa Jones ("Jones Affidavit"), Docket Entry No. 10-7, pp. 87-88.

[24]Id., Exhibit 1C—Affidavit of John Derek Connally ("Connally Affidavit"), Docket Entry No. 10-7, p. 89.

[25]Id., Exhibit 1D—Affidavit of Keith A. Drury ("Drury Affidavit") and Exhibit 1E—Affidavit of Tara Gayle Tunstall ("Tunstall Affidavit"), Docket Entry No. 10-7, pp. 90-91.

The State filed a response, which included affidavits from the prosecutor and Officer Guidry, noting that Connally's identity was not withheld from the defense because he was identified in the police offense report and was on the state's witness list for trial.[26]  Officer Guidry provided an affidavit, explaining that during her investigation she located Connally, who told her that he saw a man wearing a "D.E.A. cap" and two other men armed with guns on the night of the robbery, but that he would not be willing to come to court.[27]  The prosecutor submitted an affidavit explaining that Connally was a homeless drug addict with a criminal record, who advised him that he wanted nothing to do with the case and would not comply with the subpoena summoning him as a witness.[28] After considering the parties' submissions, the trial court summarily denied Walker's Motion for New Trial.[29]

On direct appeal Walker's appellate attorney moved to withdraw and filed a brief under Anders v. California, 87 S. Ct. 1396 (1967) (an "Anders brief"), stating that review of the record revealed "no reversible error and no grounds on which an appeal [could] be

_____

[26]State's Response to Defendant's Motion for New Trial ("State's Response"), Docket Entry No. 10-7, p. 92.

[27]Affidavit of Colleen Guidry ("Guidry Affidavit"), attached to State's Response, Docket Entry No. 10-7, pp. 97-98.

[28]Affidavit of Dan Richardson ("Richardson Affidavit"), attached to State's Response, Docket Entry No. 10-7, pp. 95-96.

[29]Order, Docket Entry No. 10-7, p. 159.

predicated."[30]  Walker filed a <u>pro se</u> brief in response, raising the following points of error:

> (1)  The trial court erred by denying his motion to suppress his arrest and subsequent search that were based on a fraudulent warrant;
>
> (2)  the trial court erred by denying his motion for new trial based on prosecutorial misconduct and violations of <u>Brady v. Maryland,</u> 83 S. Ct. 1194 (1963) (<u>"Brady</u> violations");
>
> (3)  he was denied a fair trial when the prosecutor introduced inadmissible evidence of his other crimes, acts, or wrongs;
>
> (4)  he was denied a fair trial when the prosecutor introduced inadmissible character evidence to impeach defense witnesses;
>
> (5)  he was denied a fair trial when the prosecutor intentionally elicited false testimony from defense witnesses; and
>
> (6)  he was denied effective assistance of counsel when his appellate attorney failed to raise the preceding five points of error.[31]

An intermediate court of appeals summarily affirmed the conviction and dismissed the appeal as "wholly frivolous."  <u>Walker v. State,</u> No. 01-05-00519-CR, 2006 WL 1914048, at *1-2 (Tex. App. — Houston [1st Dist.] July 13, 2006).

Walker appealed further by raising the following claims in a Petition for Discretionary Review before the Texas Court of Criminal Appeals:

---

[30]Brief for Appellant, Bruce Wayne Walker[,] An Analysis of the Appellate Record in Accordance with <u>Anders v. California,</u> [87 S. Ct. 1396] (1967), Docket Entry No. 10-5, pp. 3-4.

[31]Brief for Appellant, Pro Se, Docket Entry No. 10-4, pp. 29, 37, 46, 50, 54 (setting out points of error 1-5); Supplement for Appellant's Brief, Pro Se, Docket Entry No. 10-3, p. 6 (setting out point of error 6).

> (1) the court of appeals erred by failing to address his claim that the trial court abused its discretion when it failed to correct the ruling on his motion to suppress that was based on false testimony and allowed to stand rulings that resulted in placing constitutionally inadmissible evidence before the jury;
>
> (2) the court of appeals erred by failing to address the prosecutor's suppression of two material witnesses whose testimony could have exonerated Walker and called into question a prosecution witness's presence at the scene of the robbery.[32]

The Texas Court of Criminal Appeals refused Walker's Petition for Discretionary Review without a written order on December 20, 2006.[33] On October 1, 2007, the United States Supreme Court denied Walker's petition for a writ of certiorari. See Walker v. Texas, 128 S. Ct. 64 (2007).

On September 19, 2008, Walker executed an Application for a Writ of Habeas Corpus Seeking Relief From [a] Final Felony Conviction Under [Texas] Code of Criminal Procedure, Article 11.07 ("State Habeas Application"), raising the following grounds for relief:

> (1) the prosecutor committed misconduct by failing to correct false testimony from Houston Police Officer Colleen Guidry during his suppression hearing;
>
> (2) the trial court abused its discretion by failing to correct its ruling at the suppression hearing, which was based on false testimony from Officer Guidry;

---

[32]Petition for Discretionary Review, Docket Entry No. 10-6, p. 2.

[33]Official Notice From Court of Criminal Appeals of Texas, Case No. PD-1164-06, Docket Entry No. 10-17, p. 94.

(3)   the search and seizure of evidence was illegally conducted based on a warrant from Officer Guidry that was based on false statements and lacked probable cause;

(4)   the prosecutor violated <u>Brady</u> by failing to disclose material exculpatory evidence showing that Diana Michelle Dayton and Eric Leon fabricated evidence against Walker to cover up Leon's theft from the pawnshop;

(5)   Walker's actual innocence is supported by newly discovered evidence showing that Dayton and Leon conspired to steal from the pawnshop and frame Walker for the offense;

(6)   the prosecutor committed misconduct by failing to correct false and misleading testimony from Leon about a "DEA hat" worn by one of the robbers, which belonged to a witness named Keith Drury and not Walker;

(7)   he was denied effective assistance of counsel when his trial attorney failed to object to the prosecutor eliciting extraneous unadjudicated offenses involving drug use, drug dealing, and carrying a gun during the guilt/innocence phase of the trial;

(8)   he was denied effective assistance of counsel when his trial attorney failed to request an instruction on the burden of proof required before the jury could consider evidence of extraneous unadjudicated offenses or bad acts when deliberating his guilt or innocence;

(9)   he was denied effective assistance of counsel when his trial attorney failed to request a limiting instruction for considering evidence of extraneous unadjudicated offenses;

(10)  he was denied effective assistance of counsel when his trial attorney failed to object to the prosecutor's improper impeachment of defense witnesses about their drug usage;

(11)  the prosecutor committed misconduct by suppressing the identity of a material eyewitness (John Derek Connolly) whose testimony would have exonerated Walker;

-10-

(12) he was denied effective assistance of counsel
because his trial attorney failed to investigate or
interview John Connolly;

(13) he was denied effective assistance of counsel when
his trial attorney failed to object to improper
jury argument by the prosecutor;

(14) he was denied effective assistance of counsel when
his trial attorney failed to object to victim-
impact statements introduced during the guilt/
innocence phase of the trial to garner sympathy for
Leon;

(15) he was denied effective assistance of counsel when
his trial attorney failed to conduct an adequate
investigation of the facts of his case and failed
to adequately impeach inconsistencies in Leon and
Dayton's testimony;

(16) he was denied effective assistance of counsel when
his appellate attorney failed to research the facts
and the law governing his case.[34]

Walker submitted numerous exhibits in support of these claims,

including the affidavits that had been submitted with his Motion

for New Trial — Paul Decuir, Jr. (Walker's trial counsel), Lisa

Jones (co-defendant Raleigh Hall's defense counsel), John Connolly,

Keith Drury, Tara Gayle Tunstall, and several other individuals who

cast doubt on Dayton's credibility (Mary MacArthur, Pamala Edwards,

and Jose Chavez).[35]   He then submitted a motion asking for a stay

_____

[34]Application for a Writ of Habeas Corpus Seeking Relief from
Final Felony Conviction Under Code of Criminal Procedure, Article
11.07 ("State Habeas Application"), Docket Entry No. 10-17,
pp. 9-83; see also State's Original Answer, Docket Entry No. 10-17,
pp. 203-21 (addressing the 16 grounds for relief presented by
Walker).

[35]Exhibits to State Habeas Application, Docket Entry No. 10-17,
pp. 118-28 (Affidavits from Paul Decuir, Jr., Lisa Jones,
John Derek Connolly, Keith A. Drury, Tara Gayle Tunstall, Mary
MacArthur, Pamala Edwards, and Jose Chavez).

of the proceedings so he could file an amended state habeas application.[36]

The trial court did not rule on Walker's motion for leave to amend. Instead, on October 22, 2008, the trial court signed a proposed Order submitted by the State designating several issues that needed to be resolved in the case, including whether:

(1) the State relied on perjured testimony;

(2) the trial court committed error;

(3) Walker was subjected to an illegal search and seizure;

(4) the State violated <u>Brady</u> by withholding evidence;

(5) Walker was actually innocent; and

(6) Walker was denied effective assistance of counsel at trial and on direct appeal.[37]

The trial court stated that it would resolve these issues "and then enter findings of fact."[38]

After the trial court designated issues for resolution on October 22, 2008, Walker's habeas proceeding sat dormant for many years. Eleven years later on February 13, 2019, the State finally submitted an answer to Walker's State Habeas Application.[39]  The

---

[36]Applicant's Motion for a Stay to File Amendment to Application for Writ of Habeas Corpus 11.07, Docket Entry No. 10-17, pp. 190-92.

[37]Respondent's Proposed Order Designating Issues, Docket Entry No. 10-17, p. 195.

[38]<u>Id.</u>

[39]State's Original Answer, Docket Entry No. 10-17, pp. 202-21.

-12-

State also filed two copies of the same proposed findings of fact and conclusions of law, recommending that relief be denied.[40] Neither copy was signed by the trial court.[41] On July 13, 2020, the Harris County District Clerk's Office forwarded Walker's State Habeas Application to the Texas Court of Criminal Appeals without findings of fact, conclusions of law, or a recommendation from the judge assigned to Walker's post-conviction proceeding.[42]

While his State Habeas Application was pending before the Texas Court of Criminal Appeals, Walker filed his pending federal Petition on October 1, 2020.[43] He raises the following grounds for relief under 28 U.S.C. § 2254, several of which differ from the claims he raised in state court:

> (1) he was denied due process and the right to meaningfully challenge his conviction due to "intolerable delay" in ruling on his State Habeas Application;
>
> (2) the trial court abused its discretion by failing to correct its ruling on his motion to suppress evidence after discovering that Officer Guidry gave false testimony during the suppression hearing;

---

[40]State's Proposed Findings of Fact, Conclusions of Law and Order, Docket Entry No. 10-17, pp. 225-42 (copy one filed February 13, 2019); pp. 243-60 (copy two filed August 28, 2019).

[41]See id. at 241, 259.

[42]Appendix F, In the Court of Criminal Appeals of Texas – Clerk's Summary Sheet for Postconviction Applications for Writ of Habeas Corpus Under Code of Criminal Procedure, Articles 11.07 and 11.071, Docket Entry No. 10-17, p. 1.

[43]Petition, Docket Entry No. 1, p. 10 (certifying that Walker placed his Petition in the prison mail system on October 1, 2020).

(3)   the prosecutor engaged in misconduct by knowingly
      eliciting or failing to correct false testimony
      from Officer Guidry about whether officers
      illegally seized evidence from Walker's residence
      following a warrantless search;

(4)   the prosecutor committed misconduct by knowingly
      eliciting "false testimony to improperly impeach
      crucial defense evidence" in the form of a recorded
      phone conversation in which Dayton reportedly said
      that her boyfriend Eric Leon, not Walker, robbed
      the pawnshop and that Walker's only role was to
      help Dayton sell some of the stolen goods;

(5)   the prosecutor violated Brady by failing to
      disclose the identity of an eyewitness, John
      Connolly, who subsequently provided an affidavit
      stating that he was in the pawnshop at the time of
      the robbery, that Walker was not one of the men he
      saw there, and that he would testify in Walker's
      defense;

(6)   the prosecutor violated Brady by failing to
      disclose statements made by Dayton to Officer
      Guidry, in which Dayton falsely claimed that Walker
      had sexually assaulted her;

(7)   he has newly discovered evidence of his actual
      innocence that was unavailable at trial, including
      affidavits from witnesses who say Dayton told them
      that she was being forced to give false testimony
      against Walker in exchange for a "lenient plea
      agreement";

(8)   he was denied effective assistance of counsel when
      his trial attorney failed to:

      (a)   investigate and discover Dayton's false claim
            of sexual assault;

      (b)   call as a witness co-defendant Raleigh Hall,
            who would have testified that he did not know
            Walker and had not committed any robbery with
            him;

      (c)   investigate and discover that Officer Guidry
            had not met with the complainant (Leon) to
            conduct a photo-spread on December 7, 2004, as
            she falsely claimed in her testimony during
            the suppression hearing;

      (d)   investigate and discover Dayton's medical records and false allegations of sexual assault by Walker;

      (e)   request a jury instruction on the State's "excessive use of evidence of unadjudicated extraneous offenses";

      (f)   investigate and discover that a "DEA hat" reportedly worn by Walker during the robbery actually belonged to State's witness Keith Drury, who was ordered to leave the courthouse by the prosecutor without disclosing this information to defense counsel; and

    (9)  he was denied effective assistance of counsel on appeal when his attorney ignored evidence and meritorious arguments presented during his motion for new trial and filed an <u>Anders</u> brief, alleging that there were no grounds for appeal.[44]

After this court requested an answer to the Petition,[45] the respondent provided records showing that Walker's State Habeas Application was summarily "denied without written order" by the Texas Court of Criminal Appeals on March 17, 2021.[46] Walker, who was then given the opportunity to submit additional briefing about his claims, filed a Memorandum of Law in Support of Habeas Corpus 28 U.S.C. § 2254 ("Petitioner's Memorandum"), which includes several affidavits that were filed in state court.[47]

---

[44]<u>Id.</u> at 6-7, 12-20.

[45]Order and Request for Answer, Docket Entry No. 3.

[46]State Court Records, Postcard Notification from Clerk Deana Williamson of the Texas Court of Criminal Appeals in WR-26,709-02, Docket Entry No. 31-1, pp. 1-3.

[47]Petitioner's Memorandum, Docket Entry No. 22. The following affidavits are attached to Petitioner's Memorandum: Affidavit of Jose Chavez ("Chavez Affidavit"), pp. 59-60; Affidavit of Mary MacArthur ("MacArthur Affidavit"), p. 61; Affidavit of Pamala
(continued...)

The respondent has moved for summary judgment, arguing that claims 1, 3, 4, 8(a)-(d), and 8(f) were not properly raised in state court and should be dismissed with prejudice as both unexhausted and procedurally barred.[48] The respondent argues further that claims 2, 5, 6, 7, 8(e), and 9 should be dismissed with prejudice because Walker is not entitled to relief under the deferential federal habeas corpus standard of review that applies to claims which have been adjudicated on the merits in state court.[49]

Walker argues that he "fairly presented" the substance of his claims in state court and that he has satisfied the exhaustion requirement.[50] Walker contends further that any failure to comply with the exhaustion requirement should be excused by his pro se status,[51] and by the inordinate delay in obtaining review of his State Habeas Application.[52] Walker indicates that he would voluntarily dismiss claims 1, 3, 4, 8(a)-(d), and 8(f) if the court

---

[47](...continued)
Edwards ("Edwards Affidavit"), p. 62; Affidavit of John Derek Connally ("Connally Affidavit"), p. 65; Affidavit of Paul Decuir, Jr. ("Decuir Affidavits"), p. 66; Affidavit of Lisa Jones ("Jones Affidavit"), p. 67; Affidavit of Tara Gayle Tunstall ("Tunstall Affidavit"), p. 68; Affidavit of Keith A. Drury ("Drury Affidavit"), p. 69.

[48]Respondent's MSJ, Docket Entry No. 32, pp. 9, 12-17.

[49]Id. at 17-34.

[50]Petitioner's Response, Docket Entry No. 51, p. 22.

[51]Id. at 22-24.

[52]Id. at 51.

-16-

finds them to be unexhausted, but argues "vehemently" that these claims should be deemed exhausted or excused from the exhaustion requirement by the state's lengthy delay in responding to his State Habeas Application.[53]  Noting that Walker never presented claims 1, 3, 4, 8(a)-(d), and 8(f) in state court, the respondent maintains that these claims remain unadjudicated and that his failure to exhaust state court remedies is not excused by the delay in his state habeas proceeding.[54]  The parties' arguments are considered below under the applicable standards of review, beginning with the exhaustion requirement for federal habeas corpus review and the doctrine of procedural default.

## II. __Exhaustion and the Doctrine of Procedural Default__

A federal court may not grant habeas corpus relief to a state prisoner unless he "has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A).  Exceptions exist only where there is an absence of an available state corrective process or where circumstances exist that render such process ineffective to protect the rights of the applicant.  See 28 U.S.C. § 2254(b)(1)(B).

To satisfy the exhaustion requirement a Texas prisoner must present his claims in a procedurally proper manner to the Texas Court of Criminal Appeals.  See O'Sullivan v. Boerckel, 119 S. Ct.

---

[53]Id. at 20-21.

[54]Respondent's Surreply, Docket Entry No. 56, pp. 4, 7-11.

-17-

1728, 1731-34 (1999); Richardson v. Procunier, 762 F.2d 429, 432 (5th Cir. 1985). A Texas prisoner may exhaust remedies by taking the following paths to the Texas Court of Criminal Appeals: (1) the petitioner may file a direct appeal from a judgment of conviction followed, if necessary, by a petition for discretionary review in the Texas Court of Criminal Appeals; and/or (2) he may file an application for a writ of habeas corpus under Article 11.07 of the Texas Code of Criminal Procedure in the convicting court, which is transmitted to the Texas Court of Criminal Appeals once the trial court determines whether findings are necessary. See Tex. Code Crim. Proc. art. 11.07 § 3(c). "Habeas petitioners must exhaust state remedies by pursuing their claims through one complete cycle of either state direct appeal or post-conviction collateral proceedings." Busby v. Dretke, 359 F.3d 708, 723 (5th Cir. 2004).

Where a prisoner fails to properly exhaust available state remedies, or where remedies are rendered unavailable by a prisoner's own procedural default, federal courts are barred from reviewing the claims. See Sones v. Hargett, 61 F.3d 410, 416 (5th Cir. 1995); see also Coleman v. Thompson, 111 S. Ct. 2546, 2557 n.1 (1991). A procedurally defaulted claim is precluded from federal habeas review unless the petitioner can show (1) cause for the default and resulting prejudice, or (2) that the court's failure to consider the claims would result in a "fundamental miscarriage of justice." Coleman, 111 S. Ct. at 2565. To satisfy the exception

reserved for fundamental miscarriages of justice a petitioner must provide the court with evidence that would support a "colorable showing of factual innocence." Kuhlmann v. Wilson, 106 S. Ct. 2616, 2627 (1986).

The respondent argues that Claims 1, 3, 4, 8(a)-(d), and 8(f) are unexhausted because Walker failed to present them in state court when he had an opportunity to do so.[55]  The record confirms that Walker did not raise these claims in his Petition for Discretionary Review or his State Habeas Application.[56]

Walker acknowledges that he did not present Claim 8(b) previously in state court and that this claim is unexhausted.[57] Although Walker argues that he "fairly present[ed]" Claims 1, 3, 4, 8(a), 8©, 8(d), and 8(f), he provides no citations to the record showing that he raised the exact same facts and legal theories in state court.[58]  A claim will not be considered unless the petitioner afforded the state court with a "'fair opportunity' to apply controlling legal principles to the facts bearing upon his constitutional claim." Anderson v. Harless, 103 S. Ct. 276, 277 (1982).  "It is not enough that all the facts necessary to support

---

[55]Respondent's MSJ, Docket Entry No. 32, pp. 9, 12-17.

[56]See Petition for Discretionary Review, Docket Entry No. 10-6, p. 2 (listing grounds for review); State Habeas Application, Docket Entry No. 10-17, pp. 9-83; see also State's Original Answer, Docket Entry No. 10-17, pp. 203-21 (responding to the claims raised by Walker).

[57]Petitioner's Response, Docket Entry No. 51, p. 21.

[58]Id. at 22.

-19-

the federal claim were before the state courts, or that a somewhat similar state-law claim was made." Id. A state prisoner is required "to present the state courts with the same claim he urges upon the federal courts." Picard v. Connor, 92 S. Ct. 509, 512 (1971). The exhaustion requirement is not satisfied where the petitioner presents new legal theories or factual claims in his federal habeas petition. See Anderson v. Johnson, 338 F.3d 382, 386 (5th Cir. 2003). Because Walker did not fairly present Claims 1, 3, 4, 8(a)-(d), and 8(f) in state court, these claims are unexhausted and Walker does not establish that a statutory exception applies. See 28 U.S.C. § 2254(b)(1)(B).

Walker has argued that exhaustion should be excused because of the state's lengthy delay in responding to his State Habeas Application.[59] The Fifth Circuit has held that "the exhaustion doctrine will not be applied when the state system inordinately and unjustifiably delays review of a petitioner's claims so as to impinge upon his due process rights." Deters v. Collins, 985 F.2d 789, 795 (5th Cir. 1993). The respondent notes, however, that this exception does not apply to Walker or excuse the fact that he did not include his unexhausted claims in his State Habeas Application.[60] Walker cites no authority showing that delay in a state post-conviction proceeding excuses a petitioner's lack of diligence for failing to present a claim for the state court's

---

[59]Motion to Stay, Docket Entry No. 35, p. 16.

[60]Respondent's Surreply, Docket Entry No. 56, pp. 7-8.

consideration. Because the lack of exhaustion was caused by Walker's failure to raise all of his claims properly in state court, Walker does not establish that exhaustion is excused by the state's delay in responding to his State Habeas Application.

The respondent argues that Walker's unexhausted claims (Claims 1, 3, 4, 8(a)-(d), and 8(f)) are now barred from federal review by the doctrine of procedural default because of the Texas rule prohibiting successive habeas applications as an abuse of the writ.[61] See Tex. Code Crim. Proc. art. 11.07 § 4; Ex parte Whiteside, 12 S.W.3d 819, 821-22 (Tex. Crim. App. 2000). Although Walker previously filed a State Habeas Application raising sixteen grounds for relief, this court granted Walker an opportunity to return to state court and attempt to raise his unexhausted claims in a successive application.[62] After the court granted his request for a stay, Walker declined to return to state court after concluding it would be "futile" to do so.[63] Walker acknowledged that the Texas Court of Criminal Appeals would likely bar any attempt to raise this claim in a subsequent state habeas application as an abuse of the writ.[64] The Fifth Circuit has recognized that dismissal of a state habeas application for abuse

---

[61]Respondent's MSJ, Docket Entry No. 32, pp. 15-17.

[62]See Memorandum Opinion and Order dated June 22, 2022, Docket Entry No. 38, p. 19.

[63]Motion to Reinstate, Docket Entry No. 41, p. 4.

[64]Id.

-21-

of the writ by the Texas Court of Criminal Appeals constitutes a procedural default that is sufficient to bar federal habeas review of a petitioner's claims. See Nobles v. Johnson, 127 F.3d 409, 423 (5th Cir. 1997); Fearance v. Scott, 56 F.3d 633, 642 (5th Cir. 1995).

As cause for his default, Walker appears to point to his status as a pro se litigant and the rule of liberal construction that applies to pleadings that are not prepared by an attorney.[65] However, a petitioner's pro se status, standing alone, does not constitute cause to excuse a procedural default. See Saahir v. Collins, 956 F.2d 115, 118 (5th Cir. 1992). Walker has not demonstrated cause for his default, and he has not otherwise established actual prejudice or shown that a fundamental miscarriage of justice will result from the failure to consider his defaulted claims. Therefore, the respondent is entitled to summary judgment on this issue. Alternatively, the court has considered all of Walker's claims below and concludes that he has failed to show that he is entitled to prevail under the applicable standard of review.

## III. **Standard of Review**

Claims that were adjudicated on the merits in state court are subject to deference under the federal habeas corpus standard of review established by the Antiterrorism and Effective Death Penalty

---

[65]Petitioner's Response, Docket Entry No. 51, pp. 22-23.

Act (the "AEDPA"), 28 U.S.C. § 2254(d). See Anaya v. Lumpkin, 976 F.3d 545, 550 (5th Cir. 2020). Under this deferential standard a federal habeas corpus court may not grant relief unless the state court's conclusion "'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]'" 28 U.S.C. § 2254(d)(1). Likewise, if a claim presents a question of fact, a petitioner cannot obtain federal habeas relief unless he shows that the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

"A state court's decision is deemed contrary to clearly established federal law if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." Matamoros v. Stephens, 783 F.3d 212, 215 (5th Cir. 2015) (internal quotation marks and citations omitted). To constitute an "unreasonable application of" clearly established federal law, a state court's holding "must be objectively unreasonable, not merely wrong; even clear error will not suffice." Woods v. Donald, 135 S. Ct. 1372, 1376 (2015) (quoting White v. Woodall, 134 S. Ct. 1697, 1702 (2014)). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and

comprehended in existing law beyond any possibility for fairminded disagreement.'" Id. (quoting Harrington v. Richter, 131 S. Ct. 770, 786-87 (2011)).

The Texas Court of Criminal Appeals denied Walker's Petition for Discretionary Review and his State Habeas Corpus Application without a written order or opinion, which qualifies as an adjudication on the merits of the claims that were presented in those proceedings. See Miller v. Johnson, 200 F.3d 274, 281 (5th Cir. 2000) ("Under Texas law a denial of relief by the Court of Criminal Appeals serves as a denial of relief on the merits of the claim."). The deferential AEDPA standard of review applies even where the state court fails to cite applicable Supreme Court precedent or explain its decision. See Early v. Packer, 123 S. Ct. 362, 365 (2002) (per curiam); see also Cullen v. Pinholster, 131 S. Ct. 1388, 1402 (2011) ("Section 2254(d) applies even where there has been a summary denial."); Richter, 131 S. Ct. at 785 ("This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'"). Because a federal habeas corpus court only considers the reasonableness of the state court's ultimate decision, the AEDPA inquiry is not altered when the state court denies relief without a written opinion. See Schaetzle v. Cockrell, 343 F.3d 440, 443 (5th Cir. 2003). In such circumstances, a federal habeas corpus court: "(1) assumes that the state court applied the proper 'clearly established Federal law'; and (2) then determines whether its decision was 'contrary

-24-

to' or 'an objectively unreasonable application of' that law." Id.
(quoting 28 U.S.C. § 2254(d)(1)-(2)).

To the extent that Walker failed to present some of his claims
properly in state court, there was no adjudication on the merits
for Claims 1, 3, 4, 8(a)-(d), and 8(f). Under these circumstances,
the deferential standard found in 28 U.S.C. § 2254(d), as amended
by the AEDPA, does not apply and the court considers those claims
under the pre-AEDPA de novo standard of review. See Henderson v.
Cockrell, 333 F.3d 592, 598 (5th Cir. 2003) (citing Jones v. Jones,
163 F.3d 285, 299-300 (5th Cir. 1998)). To obtain relief under
this standard the petitioner must demonstrate that his conviction
was tainted by a constitutional violation. See 28 U.S.C.
§ 2241(c)(3).

## IV. Discussion

### A. Claim 1: Denial of Due Process

Walker's primary claim is that he is entitled to relief from
his conviction because he was denied due process by the State of
Texas during his state habeas corpus proceeding.[66] Walker contends
that relief is warranted because he was denied meaningful post-
conviction review as the result of lengthy delay by the state in
responding to his State Habeas Application.[67]

As noted above, this claim is unexhausted and procedurally
barred. More importantly, Walker is not entitled to relief because

---

[66]Petition, Docket Entry No. 1, p. 6.

[67]Id. at 6, 12.

-25-

this claim does not present a viable issue for federal habeas review. The Fifth Circuit has repeatedly held that infirmities or errors that occur during state collateral review proceedings "'do not constitute grounds for relief in federal court.'" Rudd v. Johnson, 256 F.3d 317, 319 (5th Cir. 2001) (quoting Trevino v. Johnson, 168 F.3d 173, 180 (5th Cir. 1999)) (citations omitted). Instead, a habeas corpus petitioner must demonstrate that a constitutional violation occurred during the underlying proceeding that resulted in his confinement before a federal court may issue the writ. See, e.g., Morris v. Cain, 186 F.3d 581, 585 n.6 (5th Cir. 1999) (citations omitted); see also Nichols v. Scott, 69 F.3d 1255, 1275 (5th Cir. 1995) (explaining that "[a]n attack on a state habeas proceeding does not entitle the petitioner to habeas relief in respect to his conviction, as it is an attack on a proceeding collateral to the detention and not the detention itself") (citation and internal quotation marks omitted). Accordingly, to the extent that Walker challenges infirmities or errors that occurred on state collateral review, he fails to state a claim upon which federal habeas relief may be granted. See Rudd, 256 F.3d at 319; see also Hallcy v. Lumpkin, No. 23-10473, 2023 WL 4351242, at *1 (5th Cir. July 5, 2023) (per curiam) ("[A] challenge to infirmities in a state habeas proceeding is not cognizable on federal habeas review."). Therefore, Walker is not entitled to relief on Claim 1.

## B. Claim 2: The Motion to Suppress Evidence

Walker contends that the trial court abused its discretion by failing to correct "sua sponte" its ruling on his motion to suppress evidence seized from a locked suitcase within the trunk of his vehicle after discovering that Officer Guidry gave false testimony.[68] Walker claims that Officer Guidry testified during a suppression hearing that she met with the complainant, Eric Leon, to conduct a photo spread on December 7, 2004, and that Leon identified Walker as one of the robbery suspects.[69] Walker explains that Leon's identification was the basis of the warrant that issued for his arrest and the search of his vehicle as an incident to the arrest.[70] Walker claims that Officer Guidry testified at trial that Leon's identification was based on a physical description that he gave during a phone conversation that occurred on December 7, 2004, and that Leon had not, in fact, viewed a photographic array.[71] Walker argues that the trial court should have corrected its ruling and granted his motion to suppress once it learned that its former ruling was based entirely upon the "false testimony" of Officer Guidry.[72]

---

[68] Petition, Docket Entry No. 1, p. 6.

[69] Id. at 6, 13.

[70] Id. at 12.

[71] Id. at 13.

[72] Id.

-27-

The respondent argues that this claim, which was rejected during Walker's direct appeal, is without merit.[73] Walker's claim concerns an evidentiary ruling on his motion to suppress evidence.[74] On federal habeas review "[t]he evidentiary rulings of a state court will only be overridden when there is error 'so extreme that it constituted denial of fundamental fairness.'" Prystash v. Davis, 854 F.3d 830, 840 (5th Cir. 2017) (citations omitted); see also Bailey v. Procunier, 744 F.2d 1166, 1168 (5th Cir. 1984) (stating that federal habeas relief is warranted in this context "only when the trial judge's error is so extreme that it constitutes a denial of fundamental fairness under the Due Process Clause"). Relief on such a claim is not warranted unless the trial court's error "had substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 113 S. Ct. 1710, 1722 (1993) (citation and internal quotation marks omitted). This requires a habeas petitioner to establish that the alleged error resulted in "actual prejudice." Id. (citing United States v. Lane, 106 S. Ct. 725, 732 (1986)); see also Davis v. Ayala, 135 S. Ct. 2187, 2198 (2015) ("The Brecht standard reflects the view that a 'State is not to be put to th[e] arduous task [of retrying a defendant] based on mere speculation that the defendant was prejudiced by trial error; the court must find that the defendant

---

[73]Respondent's MSJ, Docket Entry No. 32, pp. 17, 19-20.

[74]Petition, Docket Entry No. 1, p. 6.

was actually prejudiced by the error.'") (alteration in original) (quotation omitted).

The record shows that the trial court held a hearing outside the jury's presence on a motion filed by Walker's defense counsel to suppress both his arrest and any evidence seized as a result of that arrest.[75] Officer Guidry testified that she first identified Walker as a suspect after speaking with Eric Leon, who identified his former girlfriend Diana Michelle Dayton as one of the robbers.[76] Guidry learned that Dayton was in custody at the Harris County Jail on drug charges.[77] Guidry reviewed the offense report for that arrest and learned that Walker had been in the vehicle when Dayton was taken into custody on those charges.[78] Guidry testified that she met with Leon on December 7, 2004, and showed him photo arrays that contained driver's licence photos for both Dayton and Walker.[79] Leon positively identified Dayton and tentatively identified Walker as suspects.[80] Guidry presented this information by telephone to a prosecutor with the Harris County District Attorney's Office and drafted "pocket warrant[s]" for the arrest of Dayton and Walker,

---

[75]Reporter's Record-Trial on Merits, Vol. 3, Docket Entry No. 10-11, p. 153.

[76]Id. at 154.

[77]Id. at 155.

[78]Id.

[79]Id.

[80]Id. at 156.

which were signed by a magistrate on December 8, 2004.[81] Guidry explained that Dayton and Walker were arrested pursuant to the warrants and that the vehicle they were in at the time, which had been under surveillance, was subject to an inventory search.[82] After hearing testimony from Officer Kerry Richards and Officer Lewis Childress, who participated in the arrest and the inventory search of the vehicle,[83] the trial court concluded that Walker's arrest was lawful and denied the motion to suppress.[84] In doing so, the trial court also found that the officers who effected the arrest had probable cause to search the vehicle compartment and the trunk for contraband based on their observations.[85]

The record shows that Officer Guidry gave similar testimony during trial before the jury, describing how she identified Dayton and Walker as suspects and prepared the photo spreads that she showed to Leon.[86] Guidry told the jury that Leon positively identified Dayton and tentatively identified Walker as one of the male suspects.[87] Consistent with the testimony that she gave during

---

[81] Id. at 159-60.

[82] Id. at 169.

[83] Id. at 171-89.

[84] Reporter's Record–Trial on Merits, Vol. 4, Docket Entry No. 10-12, p. 9.

[85] Id.

[86] Reporter's Record–Trial on Merits, Vol. 5, Docket Entry No. 10-13, pp. 35-40.

[87] Id. at 41.

-30-

the suppression hearing, Guidry then explained to the jury how she obtained warrants for Dayton and Walker's arrest.[88]  During cross-examination, Officer Guidry acknowledged that she spoke to Eric Leon on the telephone before December 7, 2004, and that he gave her a physical description of Walker during that conversation.[89] Officer Guidry used the physical description in addition to the information that she learned during her investigation to place a hold on Walker in the event that he was stopped for a traffic violation or arrested for another offense.[90]  At no time did Guidry testify that Eric Leon did not review the photo array before the arrest warrants issued, as Walker alleges in his Petition.

Because Walker does not establish that Officer Guidry testified falsely, he does not show that the trial court erred in connection with the motion to suppress.  Absent a showing that the trial court erred, Walker fails to show that the state court's decision to deny relief was unreasonable or wrong.  See 28 U.S.C. § 2254(d). Therefore, Walker is not entitled to relief on this claim.

## C.    Claim 3:  Prosecutorial Misconduct (Part One)

Walker contends that the prosecutor committed misconduct by knowingly eliciting or failing to correct false testimony from

---

[88]Id. at 42, 44.

[89]Id. at 70-71.

[90]Id. at 71-72; see also Offense Report, attached to State Habeas Application, Docket Entry No. 10-17, p. 159 (reflecting that Officer Guidry placed a hold on Dayton and Walker, indicating that they were wanted for questioning in connection with the pawnshop robbery).

Officer Guidry about whether officers illegally seized evidence from Walker's residence following a warrantless search.[91] Walker explains that Officer Guidry transported him back to his residence following his arrest.[92] Walker contends that Officer Guidry "falsely testified [that] officers had NOT conducted a warrantless search of [his residence]" and that the officers "had NOT seized any evidence from [Walker's] property."[93] Walker argues that the prosecutor knew that this testimony was false because "[t]he State was in fact in possession of and entered into evidence the content[s] of a safe (jewelry) officers had illegally seized without a warrant from a building located in Petitioner's back yard."[94]

For reasons discussed previously, this claim is unexhausted and procedurally barred because Walker did not fairly present the claim in state court. Walker also fails to establish that Officer Guidry testified falsely or that the prosecutor engaged in misconduct by failing to correct her testimony in violation of his constitutional rights.

The Supreme Court has held that "a State may not knowingly use false evidence, including false testimony, to obtain a tainted conviction[.]" Napue v. People of the State of Illinois, 79 S. Ct.

---

[91] Petition, Docket Entry No. 1, pp. 7, 14.

[92] Id. at 7.

[93] Id. at 7, 14 (emphasis in original).

[94] Id. at 14.

-32-

1173, 1177 (1959). The prosecution denies a criminal defendant due process when it knowingly presents false testimony at trial or allows untrue testimony to go uncorrected. See Giglio v. United States, 92 S. Ct. 763, 766 (1972); see also Moody v. Johnson, 139 F.3d 477, 484 (5th Cir. 1998) ("It is well settled that the State is not permitted to present false evidence or allow the presentation of false evidence to go uncorrected.") (citations omitted). To demonstrate a constitutional violation in this context a defendant must show that "(1) the evidence was false, (2) the evidence was material, and (3) the prosecution knew that the evidence was false." Nobles v. Johnson, 127 F.3d 409, 415 (5th Cir. 1997) (citing Giglio, 92 S. Ct. at 765-66) (citation omitted). This requires a defendant to show that the state introduced "specific misleading evidence important to the prosecution's case in chief." Donnelly v. DeChristoforo, 94 S. Ct. 1868, 1873 (1974).

The court has reviewed the testimony that Officer Guidry gave during the hearing on Walker's motion to suppress and the testimony that Guidry subsequently gave in front of the jury.[95] Officer Guidry testified that Walker's wife would not allow officers to search the residence without a warrant, but that Jose Chavez gave

---

[95]Reporter's Record-Trial on Merits, Vol. 3, Docket Entry No. 10-11, pp. 153-70; Reporter's Record-Trial on Merits, Vol. 5, Docket Entry No. 10-13, pp. 33-75. Chavez, who was described as the boyfriend of one of Walker's daughters, was living with the Walkers at that time. Reporter's Record-Trial on Merits, Vol. 5, Docket Entry No. 10-13, p. 148. He was also in the car with Walker and Dayton when they were arrested by police. Reporter's Record-Trial on Merits, Vol. 3, Docket Entry No. 10-11, pp. 176-78.

a box of jewelry that he had "stashed" in the bushes behind the house to one of the officers who was present (Sergeant Richards).[96] Richards later received additional stolen property from Keith Drury that had been hidden at another location.[97] When asked if officers searched Walker's home, Walker's wife, Cindy Walker, testified that they did not.[98] Walker does not demonstrate that Officer Guidry gave false testimony about the manner in which the stolen items were recovered or that the prosecutor violated his right to due process by failing to correct the testimony. Therefore, Walker is not entitled to relief on this claim.

## D. Claim 4: Prosecutorial Misconduct (Part Two)

Walker contends that the prosecutor committed misconduct by knowingly eliciting "false testimony to improperly impeach crucial defense evidence" in the form of a recorded phone conversation in which Diana Dayton said that her boyfriend, Eric Leon, not Walker, robbed the pawnshop and that Walker's only role was to help Dayton sell some of the stolen goods.[99] Walker explains that his defense

---

[96]Reporter's Record-Trial on Merits, Vol. 3, Docket Entry No. 10-11, p. 184; Reporter's Record-Trial on Merits, Vol. 5, Docket Entry No. 10-13, pp. 46-47. The small box of jewelry recovered from the back yard of the residence is depicted in State's Exhibit 74. See Reporter's Record-Exhibit Index, Vol. 8, Docket Entry No. 10-16, p. 159.

[97]Reporter's Record-Trial on Merits, Vol. 5, Docket Entry No. 10-13, pp. 51-52.

[98]Id. at 163.

[99]Petition, Docket Entry No. 1, pp. 7, 14-15.

-34-

counsel introduced into evidence a tape-recorded phone conversation involving Walker's wife, Cindy Walker, another woman named Julie Wallis, and Dayton.[100]  During that conversation Dayton stated that Leon had stolen the jewelry and given it to Dayton to sell for him, but then "freaked out for some reason and falsely claimed he had been robbed."[101]  Walker argues that the prosecutor elicited false and misleading testimony to improperly impeach his wife and Julie Wallis by suggesting that the tape-recording was not disclosed by the defense until the eve of trial, when it had been available for months before the trial.[102]

Because this claim was not raised in state court, either in Walker's Petition for Discretionary Review or his State Habeas Corpus Application, it is unexhausted and procedurally barred for reasons set forth above.  The claim is also without merit.

The record shows that defense witness Julie Wallis told the jury that she spoke with Dayton following her arrest and that Dayton told her that "there was no robbery."[103]  According to Wallis, Dayton said that Eric Leon gave her "some suitcases of jewelry" and that "[Walker] had nothing to do with it."[104]

---

[100]Id. at 7.

[101]Id. at 7, 14.

[102]Id. at 15.

[103]Reporter's Record-Trial on Merits, Vol. 5, Docket Entry No. 10-13, p. 117.

[104]Id.

-35-

Subsequently, Dayton repeated her claim that there was "no robbery" during a "three-way call" with Wallis and Walker's wife, Cindy, which Wallis recorded.[105]  Wallis then gave the recording to Cindy.[106]  On cross-examination by the prosecutor, Wallis conceded that she did not tell police or the District Attorney's Office about the recorded conversation because she "was talking to" Walker's defense attorney, who did not mention it until the trial.[107]

Cindy also testified that Dayton approached Walker about selling some jewelry that she received from her boyfriend, Eric.[108] Cindy testified about the conversation with Dayton that Julie Wallis recorded, in which Dayton insisted that Walker was "innocent" of robbing the pawnshop.[109]  Cindy explained that she gave the tape recording to Walker's defense counsel.[110]  Cindy also acknowledged on cross-examination that she did not contact the police or the District Attorney's Office about Dayton's admissions about the robbery being committed by Eric Leon.[111]

After this testimony Walker's defense counsel advised the trial court during a bench conference that he gave the tape

---

[105]Id. at 118.

[106]Id.

[107]Id. at 129.

[108]Id. at 138-39.

[109]Id. at 142.

[110]Id.

[111]Id. at 150.

-36-

recording to the District Attorney's Office, which was supposed to make a copy of it and return the original.[112]  The prosecutor told the trial court that he "inherited the file" from another prosecutor and that he listened to the tape recording, but returned the only copy to defense counsel.[113]  The trial court told the prosecutor that he needed to clarify the fact that he had heard the tape recording before trial because he had created an impression before the jury that he had not heard anything about its existence until trial.[114]  The prosecutor agreed to stipulate that he received the tape recording from defense counsel before trial.[115]  The trial court read the stipulation to the jury.[116]  Defense counsel then called Dayton as a witness, asking her to recall the contents of the recorded conversation.[117]  The tape recording was admitted into evidence and played for the jury.[118]

The record shows that the prosecutor voluntarily stipulated that he received a copy of the tape recording from defense counsel before trial and that this information was conveyed to the jury.[119] To the extent that Walker contends that the prosecutor engaged in

---

[112]Id. at 155-56.

[113]Id. at 156-57.

[114]Id. at 157.

[115]Id. at 158, 161.

[116]Id. at 161-62.

[117]Id. at 186-87.

[118]Id. at 195.

[119]Id. at 158, 161-62.

misconduct by creating a false impression about whether the tape was turned over before trial, he does not show that the prosecutor failed to correct this impression or that a constitutional violation occurred. See Giglio, 92 S. Ct. at 765-66. Accordingly, Walker is not entitled to relief on this claim.

**E.   Claim 5:   Brady Violation (Part One)**

Walker contends that the prosecutor violated Brady v. Maryland by failing to disclose the identity of an eyewitness, John Connolly, who subsequently provided an affidavit stating that he was in the pawnshop at the time of the robbery and that Walker was not one of the men he saw there.[120]   Noting that this claim was raised and rejected on state habeas corpus review, the respondent argues that Walker cannot prevail because the state court's decision to deny relief was reasonable.[121]

In Brady the Supreme Court held that the government violates due process when it fails to disclose evidence favorable to the accused if such evidence is "material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady, 83 S. Ct. at 1196-97. The government's duty to disclose extends to both impeachment and exculpatory evidence. See United States v. Bagley, 105 S. Ct. 3375, 3380 (1985).   To

---

[120]Petition, Docket Entry No. 1, pp. 16-17.   According to Walker, Connally also stated that he would have testified for the defense.  See id.  However, Connally's affidavit does not contain such a statement.  See Connally Affidavit, Docket Entry No. 10-7, p. 89.

[121]Respondent's MSJ, Docket Entry No. 32, p. 23.

prove a Brady claim, a petitioner "must show three things: (1) the evidence at issue is favorable to the defense, either because it is exculpatory or impeaching, (2) the prosecution suppressed the evidence, and (3) the evidence is material." Murphy v. Davis, 901 F.3d 578, 597 (5th Cir. 2018) (citing United States v. Brown, 650 F.3d 581, 587-88 (5th Cir. 2011)). Evidence is not suppressed for purposes of establishing a violation of Brady "if the defendant knows or should know of the essential facts that would enable him to take advantage of it." Brown, 650 F.3d at 588 (citation and internal quotation marks omitted).

The record shows that this claim was raised initially by Walker's appellate counsel in his Motion for New Trial,[122] and rejected by the trial court after a hearing by affidavit.[123] According to the affidavit from Officer Guidry, Connolly told her that he went to the pawnshop in the middle of the night to sell something when he encountered the armed robbers, one of whom was wearing a "D.E.A. cap."[124] After reading about the offense in the newspaper, Connolly told Guidry that he recognized the older suspect depicted in the photographs (Walker) as the man wearing the D.E.A. cap.[125] Officer Guidry's encounter with Connolly is

---

[122]Motion for New Trial, Docket Entry No. 10-7, p. 76.

[123]Order, Docket Entry No. 10-7, p. 78; Order, Docket Entry No. 10-7, p. 159.

[124]Guidry Affidavit, attached to State's Response, Docket Entry No. 10-7, p. 98.

[125]Id. at 99.

documented in the offense report,[126] to which defense counsel had access.[127]   Connolly's name was disclosed on the state's witness list, which was filed with the trial court before trial.[128] Connolly's name and address were also listed on a subpoena that was filed before trial.[129]   Connolly did not testify because shortly before trial he told the prosecutor that he wanted nothing to do with the case and would not be coming to court.[130]

In the Fifth Circuit, "evidence that is turned over to the defense <u>during</u> trial, let alone <u>before</u> trial, has never been considered suppressed." <u>United States v. Swenson,</u> 894 F.3d 677, 683 (5th Cir. 2018) (emphasis in original) (citing <u>Powell v. Quarterman,</u> 536 F.3d 325, 335 (5th Cir. 2008)).   Because Walker does not demonstrate that Mr. Connolly's identity was suppressed or withheld by the state, he does not show that the state court unreasonably denied his <u>Brady</u> claim concerning this evidence.   <u>See</u> 28 U.S.C. § 2254(d).   Therefore, the respondent is entitled to summary judgment on this claim.

---

[126]Offense Report, Exhibit B to Guidry Affidavit, Docket Entry No. 10-7, pp. 156-57.

[127]Richardson Affidavit, attached to State's Response, Docket Entry No. 10-7, p. 96.

[128]<u>Id.</u> at 95.

[129]Application for Subpoena by State for Witness in District Court, Exhibit A to Guidry Affidavit, Docket Entry No. 10-7, p. 101.

[130]Richardson Affidavit, attached to State's Response, Docket Entry No. 10-7, pp. 95-96.

**F.    Claim 6:  <u>Brady</u> Violation (Part Two)**

Walker contends that the prosecutor also violated <u>Brady</u> by failing to disclose statements made by Dayton to Officer Guidry, in which Dayton falsely claimed that Walker had sexually assaulted her and then forced her to commit the robbery.[131]  The offense report reflects that Dayton was taken to the hospital for a sexual assault examination sometime after her arrest, but there are no other details and no information about the results.[132]  The respondent notes that the offense report contains no accusation of sexual assault by Dayton against Walker.[133]  Because there was no mention of sexual assault during Dayton's testimony at the trial, the respondent argues that Walker fails to show that this information was material or favorable to his defense.[134]

For purposes of establishing a <u>Brady</u> claim, "[s]uppressed evidence is material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'"  <u>Murphy</u>, 901 F.3d at 597 (quoting <u>Bagley</u>, 105 S. Ct. at 3383).  "'Undisclosed evidence that is merely cumulative of other evidence' is not likely to be considered material."  <u>Reeder v. Vannoy</u>, 978 F.3d 272, 279 (5th

---

[131]Petition, Docket Entry No. 1, p. 18.

[132]Offense Report, Exhibit B to Guidry Affidavit, Docket Entry No. 10-7, pp. 137-38.

[133]Respondent's MSJ, Docket Entry No. 32, p. 22.

[134]<u>Id.</u> at 22-23.

-41-

Cir. 2020).  Evidence that provides only "'incremental impeachment
value'" also fails to rise to the level of materiality under Brady.
Id. (citations omitted).  A Brady violation is more likely to occur
where suppressed impeachment evidence "would seriously undermine
the testimony of a key witness on an essential issue or there is no
strong corroboration."   Rocha v. Thaler, 619 F.3d 387, 397 (5th
Cir. 2010) (citation and internal quotation marks omitted).

Walker notes that page 50 of the offense report shows that
Officer Guidry received a call from Dayton's defense counsel, but
that several pages are missing from the record following that
entry.[135]  The record reflects that Dayton's defense counsel called
Guidry and advised her that he had been retained by Dayton's ex-
boyfriend, Sean Warren, but there is no other information about the
call, and the next page of the offense report continues with a
supplement starting at page 61.[136]  Walker speculates that the
missing pages contain an argument by Dayton's defense counsel that
Dayton had been kidnapped by Bruce Walker at gunpoint, forced to
participate in a robbery, and had been sexually assaulted
repeatedly by Walker.[137]  In support, he points to two affidavits
that he presented on state habeas review from Mary MacArthur and
Pamala Edwards.[138]  Both women state that they were in a "holdover"

---

[135]Petitioner's Response, Docket Entry No. 51, p. 25.

[136]Offense Report,  Exhibit B to Guidry Affidavit, Docket Entry
No. 10-7, pp. 151-52.

[137]Petitioner's Response, Docket Entry No. 51, p. 25.

[138]Id.

cell in the 182nd District Court on December 13, 2004, when they overheard Dayton tell an unidentified prosecutor that she had been kidnapped, sexually assaulted, and forced to participate in the robbery by Walker.[139]   Edwards states that "the female robbery detective" discovered that Dayton was lying because the sexual assault examination had come back "negative," but that the detective told Dayton she could get her charges reduced from aggravated robbery to robbery if she testified against Walker.[140]

The respondent has not addressed Walker's claim that there are pages missing from the offense report or the affidavits that Walker provided from MacArthur and Edwards in support of his claim that Dayton falsely accused him of sexual assault.  Assuming that this information was present in the missing pages of the offense report or that this accusation was known by the state before trial, the record confirms that there was no reference during Dayton's testimony about an alleged sexual assault by Walker.[141]   Dayton admitted that the aggravated robbery charges against her were reduced to robbery in exchange for her testimony, that she was using crystal methamphetamine and other drugs at the time, and that a state drug charge against her had been dismissed.[142]   Walker's defense counsel had an opportunity to cross-examine her about her

---

[139]Petitioner's Memorandum, Docket Entry No. 22, p. 39; MacArthur Affidavit, p. 61; Edwards Affidavit, p. 62.

[140]Edwards Affidavit, Docket Entry No. 22, p. 62.

[141]Reporter's Record-Trial on Merits, Vol. 4, Docket Entry No. 10-12, pp. 10-97.

[142]Id. at 11-12, 17-18, 57.

-43-

drug usage as well as her relationship with Walker, and the jury had an opportunity to consider Dayton's credibility.[143]

Undisclosed impeachment evidence is more likely to be considered material where the prosecution's case relies primarily on a single witness. See Reeder, 978 F.3d at 278. Dayton's testimony was not the only evidence linking Walker to the robbery. Eric Leon identified Walker as one of the men who robbed him at gunpoint,[144] and Walker was arrested while in possession of a substantial amount of merchandise stolen from the pawnshop.[145] As the Supreme Court has explained, undisclosed evidence "may not be material if the State's other evidence is strong enough to sustain confidence in the verdict." Smith v. Cain, 132 S. Ct. 627, 630 (2012); see also Rocha, 619 F.3d at 396-97 (holding that undisclosed impeachment evidence is not material if the witness's testimony is strongly corroborated). In light of the state's strong case against him, Walker does not demonstrate that if Dayton's false claim of sexual assault had been disclosed, the result of the proceeding would have been any different. See Miller v. Dretke, 431 F.3d 241, 251 (5th Cir. 2005) (observing that evidence which has only incremental impeachment value does not rise to the level of Brady materiality). Under these circumstances, Walker does not show that this information was favorable to him or

---

[143]Id. at 56-97.

[144]Reporter's Record-Trial on Merits, Vol. 3, Docket Entry No. 10-11, pp. 59-60.

[145]Id. at 176-77.

material to his defense.  See, e.g., Jackson v. Johnson, 194 F.3d 641, 650 (5th Cir. 1999) ("When Brady evidence would have only a cumulative or marginal impact on the jury's credibility assessment, habeas relief is not in order because the evidence is not material, that is, there is no reasonable probability that the result of the proceeding would have been different if the defense had been provided the evidence in question.").  Accordingly, Walker is not entitled to relief on this claim.

## G.   Claim 7:  Actual Innocence

Walker contends that he has newly discovered evidence of his actual innocence, which was unavailable at trial, including affidavits from witnesses who say Dayton told them that she was being "forc[ed]" to give false testimony against Walker in exchange for a "lenient plea agreement" from the District Attorney's Office.[146]   In support of this claim, Walker points generally to affidavits from Jose Chavez, Mary MacArthur, Pamala Edwards, John Connally, Tara Tunstall, Keith Drury, Lisa Johnson, and his defense counsel, Paul Decuir, Jr.[147]  The respondent argues that this claim, which was rejected by the Texas Court of Criminal Appeals on state habeas corpus review, is not cognizable in a federal habeas proceeding and is meritless.[148]

---

[146]Petition, Docket Entry No. 1, pp. 18-19.

[147]Petitioner's Memorandum, Docket Entry No. 22, p. 40.

[148]Respondent's MSJ, Docket Entry No. 32, pp. 23-24.

-45-

Although Texas recognizes such a claim,[149] it is well established that a claim of actual innocence, standing alone, is not an actionable ground for relief on federal habeas corpus review. See Herrera v. Collins, 113 S. Ct. 853, 860 (1993) ("Claims of actual innocence . . . have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."). Instead, a claim of actual innocence is "a gateway through which a habeas petitioner must pass to have his otherwise [procedurally] barred constitutional claim considered on the merits." Id. at 862. In that context, a petitioner must support his allegation of actual innocence with "new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." Schlup v. Delo, 115 S. Ct. 851, 865 (1995). The petitioner must then show that "it is more likely than not that no reasonable juror would have convicted him in [] light of the new evidence." Id. at 867. None of Walker's affidavits meet this demanding standard. Cf. House v. Bell, 126 S. Ct. 2064, 2068 (2006) (concluding that the petitioner met the "stringent" showing required to overcome a procedural default under Schlup).

The Fifth Circuit has consistently rejected free-standing claims of actual innocence as a ground for relief in federal habeas

---

[149]See, e.g., Ex parte Brown, 205 S.W.3d 538, 544-46 (Tex. Crim. App. 2006) (discussing claims of actual innocence based upon newly discovered evidence, which are cognizable in post-conviction writs of habeas corpus).

-46-

proceedings filed by inmates in Texas, which affords review of these claims at the state level. See In re Swearingen, 556 F.3d 344, 348 (5th Cir. 2009); Graves v. Cockrell, 351 F.3d 143, 151 (5th Cir. 2003) (collecting cases). For this reason, Walker fails to state a claim upon which habeas relief may be granted.

Even if a free-standing claim of actual innocence were recognized, Walker has not met the "extraordinarily high" standard articulated by the Supreme Court in Herrera, 113 S. Ct. at 869. To prevail under this rigorous standard, a petitioner would have to show that "evidence that could not have been obtained at the time of trial clearly establishes [the] petitioner's innocence." In re Davis, 130 S. Ct. 1, 1 (2009). None of the affidavits referenced by Walker support his allegation that Dayton was forced to give false testimony by the prosecutor or clearly establish that he did not commit aggravated robbery as charged.[150] As noted previously, Dayton admitted at trial that the charges against her were reduced from aggravated robbery to robbery and that drug charges were dismissed after she agreed to testify against Walker.[151] The jury also heard testimony and a recorded phone conversation in which Dayton told others that Eric Leon set up the robbery and that

---

[150]See Exhibits to Petitioner's Memorandum — Chavez Affidavit, pp. 59-60; MacArthur Affidavit, p. 61; Edwards Affidavit, p. 62; Connally Affidavit, p. 65; Decuir Affidavit, p. 66; Jones Affidavit, p. 67; Tunstall Affidavit, p. 68; Drury Affidavit, p. 69.

[151]Reporter's Record-Trial on Merits, Vol. 4, Docket Entry No. 10-12, pp. 11-12, 57.

Walker was not involved.[152]   The jury had an opportunity to assess
Dayton's credibility along with the state's other witnesses when it
rejected Walker's defensive theory that Leon planned the robbery.[153]
To the extent that Walker contends that the evidence supporting his
conviction was insufficient, it is important to note that "'actual
innocence' means factual innocence, not mere legal insufficiency."
Bousley v. United States, 118 S. Ct. 1604, 1611 (1998).   Based on
this record, Walker does not show that he is actually innocent or
that he is entitled to relief on this claim.

## H.   Claim 8:   Ineffective Assistance of Counsel at Trial

Walker contends that he was denied effective assistance of
counsel at trial, alleging that his attorney failed to adequately
investigate his case, call witnesses, and request a jury
instruction on unadjudicated offenses that were referenced during
the guilt-innocence phase of his proceeding.[154]   Claims for
ineffective assistance of counsel are governed by the standard
announced in Strickland v. Washington, 104 S. Ct. 2052 (1984).   To
prevail under the Strickland standard a defendant must demonstrate
(1) that his counsel's performance was deficient and (2) that the

---

[152]Reporter's Record-Trial on Merits, Vol. 5, Docket Entry
No. 10-13, pp. 116-19, 142, 150, 186-87, 189-190.

[153]Reporter's Record-Trial on Merits, Vol. 3, Docket Entry
No. 10-11, p. 15 (describing the defensive theory during opening
statement);   Reporter's Record-Trial, vol. 6, Docket Entry
No. 10-14, pp. 20-33 (describing the defensive theory with more
detail during closing argument).

[154]Petition, Docket Entry No. 1, pp. 19-20.

deficient performance prejudiced the defense.   Id. at 2064.
"Unless a defendant makes both showings, it cannot be said that the
conviction . . . resulted from a breakdown in the adversary process
that renders the result unreliable."   Id.

To prove that his defense counsel's performance was deficient,
the petitioner must show that "counsel made errors so serious that
counsel was not functioning as the 'counsel' guaranteed the
defendant by the Sixth Amendment."   Id.   The Supreme Court has
emphasized that this is a "highly deferential" inquiry:

> A fair assessment of attorney performance requires that
> every effort be made to eliminate the distorting effects
> of hindsight, to reconstruct the circumstances of
> counsel's challenged conduct, and to evaluate the conduct
> from counsel's perspective at the time.  Because of the
> difficulties inherent in making the evaluation, a court
> must indulge a strong presumption that counsel's conduct
> falls within the wide range of reasonable professional
> assistance; that is, the defendant must overcome the
> presumption that, under the circumstances, the challenged
> action "might be considered sound trial strategy."

Id. at 2065.   To   demonstrate   deficiency   a petitioner must
establish that counsel's representation "fell below an objective
standard of reasonableness."   Id. at 2064.   An attorney's perform-
ance is deficient only if "no competent attorney" would have acted
as counsel did.   Premo v. Moore, 131 S. Ct. 733, 741 (2011). In
making this inquiry, a reviewing court is "required not simply to
'give [the] attorneys the benefit of the doubt,' . . . but to
affirmatively entertain the range of possible 'reasons [defense]
counsel may have had for proceeding as they did[.]'"   Pinholster,
131 S. Ct. at 1407 (citations omitted).

-49-

To demonstrate the requisite prejudice from a deficiency, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." Strickland, 104 S. Ct. at 2067. Rather, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 2068. A petitioner must "affirmatively prove prejudice." Id. at 2067. The "likelihood of a different result must be substantial, not just conceivable." Richter, 131 S. Ct. at 792 (citing Strickland, 104 S. Ct. at 2067-68). Thus, a petitioner cannot satisfy the prejudice requirement under Strickland with mere speculation and conjecture. See Bradford v. Whitley, 953 F.2d 1008, 1012 (5th Cir. 1992). Conclusory allegations are likewise insufficient to demonstrate either deficient performance or actual prejudice. See Day v. Quarterman, 566 F.3d 527, 540-41 (5th Cir. 2009).

### 1. Claims 8(a) and 8(d): Failure to Investigate a False Claim by Dayton

In two related claims Walker alleges that his trial counsel was ineffective for failing to discover Dayton's medical records and investigate her false claim of sexual assault.[155] A defendant who alleges a failure to investigate on the part of his counsel "'must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial.'"

---

[155]Petition, Docket Entry No. 1, p. 19.

United States v. Bernard, 762 F.3d 467, 472 (5th Cir. 2014) (citation omitted) (emphasis in original); see also Miller v. Dretke, 420 F.3d 356, 361 (5th Cir. 2005).

Walker has not alleged any details in support of his failure-to-investigate claim.[156]  Assuming that Dayton made such a false claim, Walker does not demonstrate that his defense counsel knew about it or that he had any other reason to request access to her medical records.  Walker's conclusory allegations are insufficient to demonstrate deficient performance or actual prejudice.  See Lincecum v. Collins, 958 F.2d 1271, 1279 (5th Cir. 1992) (denying habeas relief where petitioner "offered nothing more than the conclusory allegations in his pleadings" to support claim that counsel was ineffective for failing to investigate and present evidence).  Because Walker has not demonstrated that his counsel was ineffective, he is not entitled to relief on Claim 8(a) or 8(d).

## 2.  Claim 8(b):  Failure to Call a Witness

Walker contends that his counsel was ineffective for failing to call his co-defendant Raleigh Hall as a witness.[157]  Walker contends that Hall would have testified that he did not know Walker and had not committed any robbery with him.[158]  Walker acknowledges

---

[156]See id.; Petitioner's Memorandum, Docket Entry No. 22, p. 40.

[157]Petition, Docket Entry No. 1, p. 19.

[158]Id.

-51-

that he did not raise this allegation previously in state court and that this claim is unexhausted.[159]  Walker cannot otherwise prevail on this claim because he fails to show that it has merit.

"Claims that counsel failed to call witnesses are not favored on federal habeas review because the presentation of witnesses is generally a matter of trial strategy and speculation about what witnesses would have said on the stand is too uncertain."  Woodfox v. Cain, 609 F.3d 774, 808 (5th Cir. 2010).  "To prevail on an ineffective assistance [of counsel] claim based upon uncalled witnesses, an applicant must name the witness, demonstrate that the witness would have testified, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable."  Gregory v. Thaler, 601 F.3d 347, 352 (5th Cir. 2010); Alexander v. McCotter, 775 F.2d 595, 602 (5th Cir. 1985) ("In order for the appellant to demonstrate the requisite Strickland prejudice, the appellant must show not only that this testimony would have been favorable, but also that the witness would have testified at trial.").

Walker has not provided a statement from Hall indicating that he would have testified favorably in his defense if called as a witness at Walker's trial.[160]  When the only evidence of a missing

---

[159]Petitioner's Response, Docket Entry No. 51, pp. 20-21.

[160]Walker provides an affidavit from Hall's defense attorney, who notes that her client entered a guilty plea to the aggravated robbery charges against him and received a 10-year prison sentence. See Jones Affidavit, Exhibit 1B to Petitioner's Memorandum, Docket Entry No. 22, p. 67.

witness's testimony is from the petitioner, courts in the Fifth Circuit view claims of ineffective assistance "with great caution." Sayre v. Anderson, 238 F.3d 631, 636 (5th Cir. 2001). "Ordinarily, a defendant's failure to present some evidence from the uncalled witness regarding that witness's potential testimony and willingness to testify would be fatal to an ineffective assistance of counsel claim." Harrison v. Quarterman, 496 F.3d 419, 428 (5th Cir. 2007) (emphasis in original); see also Sayre, 238 F.3d at 636. Because Walker does not present evidence showing that Hall was available and would have testified favorably in his defense, Walker fails to show that he is entitled to relief on this claim.

### 3. Claim 8(c): Failure to Investigate the Identification

Walker contends that his defense counsel was ineffective because he failed to investigate and discover that Officer Guidry had not met with the complainant (Eric Leon) to conduct a photo-spread on December 7, 2004, as she falsely claimed in her testimony during the suppression hearing.[161] For reasons stated previously in connection with Claim 2, Walker's allegation is unsupported by the record, which shows that Officer Guidry prepared photo spreads after identifying Dayton and Walker as suspects and showed them to Leon.[162] Arrest warrants did not issue until after Leon positively

---

[161]Petition, Docket Entry No. 1, p. 19.

[162]Reporter's Record-Trial on Merits, Vol. 3, Docket Entry No. 10-11, pp. 153-56; Reporter's Record-Trial on Merits, Vol. 5, Docket Entry No. 10-13, pp. 35-41.

identified Dayton and tentatively identified Walker as one of the male suspects who robbed him at gun point.[163] Because Walker presents no evidence showing that Officer Guidry did not meet with Leon to conduct a photo spread on December 7, 2004, before obtaining arrest warrants, his claim is conclusory and does not warrant relief.

### 4. Claim 8(e): Failure to Request a Jury Instruction

Walker contends that his attorney was deficient for failing to request a jury instruction during the guilt-innocence phase of the trial regarding the State's "excessive use of evidence of unadjudicated extraneous offenses."[164] Noting that this claim was rejected on state habeas corpus review, the respondent argues that relief must be denied because the claim is both conclusory and meritless.[165]

Walker does not provide any details to support his claim that he was entitled to a jury instruction on evidence of extraneous offenses.[166] Review of Walker's State Habeas Application reflects that he took issue with some of Dayton's trial testimony, which showed that Walker supplied her with drugs, engaged in drug dealing

---

[163]Reporter's Record-Trial on Merits, Vol. 3, Docket Entry No. 10-11, p. 156; Reporter's Record-Trial on Merits, Vol. 5, Docket Entry No. 10-13, pp. 41-42.

[164]Petition, Docket Entry No. 1, pp. 19-20.

[165]Respondent's MSJ, Docket Entry No. 32, p. 28.

[166]Petition, Docket Entry No. 1, pp. 19-20; Petitioner's Memorandum, Docket Entry No. 22, p. 40.

and drug abuse, carried a firearm everywhere on a daily basis, and engaged in promiscuous behavior.[167]   The respondent argues that Walker fails to show that he was entitled to a limiting instruction for these extraneous offenses because they are dissimilar to the aggravated robbery charge that Walker was facing.[168]   Under Texas law "[a] limiting instruction is not necessary where the extraneous offenses are so dissimilar to the charged offense that the jury cannot mistakenly draw a connection between the charged offense, and the extraneous offenses." Abdnor v. State, 871 S.W.2d 726, 738 (Tex. Crim. App. 1994) (citing Wood v. State, 39 S.W.2d 1094, 1095 (Tex. Crim. App. 1931)); see also Riley v. State, No. 14-94-01103-CR, 1997 WL 126801, at *3-4 (Tex. App. — Houston [14th Dist.] March 20, 1997, no pet.).

Walker does not show that a limiting instruction on extraneous offenses was necessary or that the trial court would have granted such a request if his counsel had made one.   Because Walker does not demonstrate that his counsel was deficient or that he was prejudiced by his counsel's failure to request a limiting instruction, he is not entitled to relief on this claim.

### 5.   Claim 8(f):   Failure to Investigate Keith Drury

Walker contends that his counsel was deficient for failing to investigate and discover that a "DEA hat" reportedly worn by Walker

---

[167]State Habeas Application, Docket Entry No. 10-17, p. 58.

[168]Respondent's MSJ, Docket Entry No. 32, p. 29.

during the robbery actually belonged to State's witness Keith Drury, who was ordered to leave the courthouse by the prosecutor without disclosing this information to defense counsel.[169] The record shows that police recovered a DEA hat when Drury was arrested and that Drury was found in possession of narcotics as well as items stolen from the pawnshop.[170]

Walker provides no other details in support of this claim and, in light of the evidence identifying him as the perpetrator of the armed robbery, Walker does not explain how Mr. Drury's possession of a DEA hat excludes the possibility that Walker also owned one.[171] The Fifth Circuit has repeatedly emphasized that "mere conclusory allegations do not raise a constitutional issue in a habeas proceeding." Ross v. Estelle, 694 F.2d 1008, 1012 (5th Cir. 1983) (citing Schlang v. Heard, 691 F.2d 796, 798 (5th Cir. 1982) (collecting cases)). Because Walker has failed to demonstrate that his trial counsel's performance was deficient or that he was actually prejudiced for the alleged failure to investigate Keith Drury as a potential witness for the defense, Walker is not entitled to relief on this claim.

---

[169]Petition, Docket Entry No. 1, p. 20.

[170]Reporter's Record-Trial on Merits, Vol. 4, Docket Entry No. 10-12, pp. 182-83; Reporter's Record-Exhibit Index, Vol. 8, Docket Entry No. 10-16, p. 174.

[171]Petition, Docket Entry No. 1, p. 20; Petitioner's Memorandum, Docket Entry No. 22, p. 40.

**I. Claim 9: Ineffective Assistance of Counsel on Appeal**

Walker contends that he was denied effective assistance of counsel on appeal when his attorney ignored evidence and meritorious arguments presented during his Motion for New Trial and filed an Anders brief, alleging that there were no grounds for appeal.[172] Noting that this claim was raised and rejected on state habeas corpus review, the respondent argues that Walker fails to show that his appellate attorney had a meritorious issue to raise on appeal or that he is entitled to relief.[173]

A claim of ineffective assistance on appeal is governed by the Strickland standard, which requires the defendant to establish both constitutionally deficient performance and actual prejudice. To establish that appellate counsel's performance was deficient in the context of an appeal, the defendant must show that his attorney was objectively unreasonable in failing to find arguable issues to appeal — that is, that counsel unreasonably failed to discover non-frivolous issues and raise them. Smith v. Robbins, 120 S. Ct. 746, 764 (2000). If the defendant succeeds in such a showing, he must then establish actual prejudice by demonstrating a "reasonable probability" that, but for his counsel's deficient performance, "he would have prevailed on his appeal." Id.

To the extent that Walker faults his appellate counsel for failing to argue that the prosecutor violated Brady by suppressing

---

[172]Petition, Docket Entry No. 1, p. 20.

[173]Respondent's MSJ, Docket Entry No. 32, p. 33.

Connally's identity as a material witness, Walker has failed to establish that Connolly's identity was withheld or that a Brady violation occurred for reasons discussed in Claim 5. Walker does not otherwise show that his appellate attorney was deficient for filing an Anders brief because he does not identify any other non-frivolous issue for appeal that his attorney unreasonably failed to raise. Because Walker does not show that the result of his appeal would have been different if his counsel had raised a particular argument, he does not demonstrate that he was denied effective assistance of counsel on appeal or that the state court's decision to reject this claim was unreasonable. Therefore, Walker is not entitled to relief on this claim. See 28 U.S.C. § 2254(d).

Absent a showing that any of Walker's claims have merit, the Respondent's MSJ will be granted, the Petition will be denied, and this action will be dismissed.

## V. Certificate of Appealability

Rule 11 of the Rules Governing Section 2254 Cases requires a district court to issue or deny a certificate of appealability when entering a final order that is adverse to the petitioner. A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that 'reasonable jurists would find the district court's assessment of the constitutional claims debatable or

wrong.'" Tennard v. Dretke, 124 S. Ct. 2562, 2565 (2004) (quoting Slack v. McDaniel, 120 S. Ct. 1595, 1604 (2000)). Under the controlling standard this requires a petitioner to show that "jurists of reason could disagree with the [reviewing] court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Buck v. Davis, 137 S. Ct. 759, 773 (2017) (internal quotation marks and citation omitted).

After careful review of the pleadings and the applicable law, the court concludes that reasonable jurists would not find the assessment of the constitutional claims debatable or wrong. Because the petitioner does not demonstrate that his claims could be resolved in a different manner, a certificate of appealability will not issue in this case.

## VI. Conclusion and Order

Based on the foregoing, the court **ORDERS** as follows:

1. Respondent's Motion for Summary Judgment (Docket Entry No. 32) is **GRANTED**.

2. The Petition for a Writ of Habeas Corpus By a Person in State Custody filed by Bruce Wayne Walker (Docket Entry No. 1) is **DENIED**, and this case will be dismissed with prejudice.

3. Petitioner's Response to Respondent's Motion for Summery [sic] Judgment and Motion to Voluntarily Dismiss Unexhausted Claims (Docket Entry No. 51) is **DENIED** as **MOOT**.

4. A certificate of appealability is **DENIED**.

The Clerk shall provide a copy of this Memorandum Opinion and Order to the parties.

**SIGNED** at Houston, Texas, on this 3rd day of October, 2023.

SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE

-60-